EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO ACEVEDO, acusado y apelante.

No. 2581.—*Visto:* Noviembre 10, 1926. *Resuelto:* Julio 29, 1926.

1. TESTIGOS—DEL EXAMEN O INTERROGATORIO—DEL EXAMEN DE TESTIGOS EN GENERAL.—EXAMEN POR LA CORTE—DERECHO DEL JUEZ A PARTICIPAR EN ÉL.— Aún cuando un juez tiene derecho a participar en el examen de los testigos siempre que tal derecho se mantenga dentro de los límites de una sana discreción judicial, sin embargo, en ausencia de objeción o excepción, un ligero exceso en ese respecto no garantiza una revocación.

2. DERECHO PENAL—JUICIO—CURSO Y ORDEN DEL JUICIO EN GENERAL—CONDUCTA DEL JUEZ DURANTE EL JUICIO.—CON RESPECTO A LOS TESTIGOS—CONDUCTA AL PARTICIPAR EN EL EXAMEN DE ÉSTOS.—Si bien el juez sentenciador, en el ejercicio de discreción, puede participar en el examen de los testigos, deberá hacerlo en forma tal que lleve al jurado la impresión de que fué enteramente imparcial, y de modo que no aparezca como si fuera un defensor o favoreciera una de las partes.

3. DERECHO PENAL—JUICIO—ATRIBUCIONES (PROVINCE) DE LA CORTE Y DEL JURADO—SEGÚN LAS CUESTIONES SEAN DE HECHO O DE DERECHO—ATRIBUCIONES DEL JURADO—TESTIGO DE CARGO COMO PRINCIPAL O AUTOR.—Cuando cuatro hombres se llevan a una niña en un autocamión y con ella pasan la noche en dicho vehículo, aun cuando exista evidencia tendente a demostrar que tres de ellos, cada uno independientemente, condujeron a la denunciante a alguna distancia e independientemente cometieron un acto de violación en su persona, es al jurado al que corresponde determinar con vista de los hechos todos, si cada hombre actuó con entera independencia de cualquiera de los demás o si uno de los hombres, traído como testigo contra otro de ellos, es o nó un cómplice.

4. VIOLACIÓN—PROCESO Y CASTIGO—JUICIO Y REVISIÓN—APELACIÓN—RESOLUCIÓN Y DISPOSICIÓN DEL CASO—REVOCACIÓN.—Cuando un acusado tiene derecho a que se instruya al jurado, en substancia, en el sentido indicado en instrucciones especiales por él solicitadas y negadas por la corte, si dichas instrucciones no están cubiertas por las generales dadas al jurado, procede la revocación de la sentencia apelada.

SENTENCIA de *Tomás Bryan,* J. (Aguadilla), condenando al acusado por delito de violación. *Revocada,* ordenándose la celebración de un nuevo juicio.

*Buenaventura Esteves,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

OPINIÓN DEL JUEZ ASOCIADO SR. HUTCHISON, CON LA CUAL ESTÁ
CONFORME EL JUEZ ASOCIADO SR. WOLF.

El acusado fué convicto del delito de violación técnica y sentenciado a una pena de presidio de 30 años con trabajos forzados.

El señalamiento de errores contiene nueve especificaciones. Consideraremos las más importantes en forma general sin tratar de hacer una discusión separada de cada punto según ha sido presentado.

[1, 2] El apelante se queja de la conducta del juez sentenciador durante el curso del juicio y dice lo siguiente:

"En el curso del juicio, el Hon. Juez de Distrito era más bien otro fiscal y no sólo intervenía para aclarar los puntos oscuros de las declaraciones de los testigos de cargo, sino que hacía manifestaciones y formulaba preguntas capciosas para robustecer la prueba de la acusación. Citemos algunas de esas manifestaciones y preguntas tomadas, al azar, del récord del caso:

"Declarando la testigo de cargo Elisa Vélez, que es la perjudicada en este caso, el Fiscal le hizo las siguientes preguntas:

" 'Fisc.—¿Le hicieron algo?—Test.—Sí, señor.—Fisc.—¿Qué le hicieron?—Test.—. . . . Juez.—La deshonraron a Ud?—Test.—Sí, señor.—Juez.—Usted dice "la deshonraron," ¿quién fué, o quiénes eran?—Test.—Pancho Acevedo, Luis Millán y ese otro muchacho.' (Vide, Transcript, p. 10.)

"Declarando el testigo de cargo Adelis Hernández, cómplice en este caso, la defensa levantó la cuestión de que su testimonio no podía servir para corroborar la declaración de la ofendida, y el señor juez dijo:

" 'La Corte entiende que no es la declaración de un cómplice, sino que es la declaración de un individuo que después del acusado haber cometido un delito, él también lo comete, o sea, comete otro delito de violación, en caso de que lo cometiera, son delitos distintos, aunque ejecutados subsiguientemente.' (Vide, Transcript, p. 21.)

"Declarando el testigo de cargo Adelis Hernández:

" 'Juez.—Después que llegó el truck allí y que pasó eso con Luis Millán, y que pasó lo que usted dice con Acevedo, usted se

quedó en el truck o se fué para su casa?—Test.—No señor, me fuí
para mi casa.—Juez.—Cuando se fué a su casa, ¿quién quedaba en
el truck?—Test.—El señor Francisco Acevedo.—Juez.—¿Y la mu-
chacha?—Test.—Delante, en el carro.—Juez.—¿Estaba en el carro
cuando se fué?—Test.—Sí señor.—Juez.—De modo que si después
de usted irse alguien le hubiera puesto las pantaletas, usted no po-
día verlo porque usted se había ido?—Test.—Ya estaba amaneciendo.
—Juez.—¿Ella había quedado en el truck y usted se fué?—Test.—
Sí señor.—Juez.—¿Cuando usted se fué ya había venido Luis Mi-
llán, o todavía no?—Test.—Todavía.—Juez.—¿No había venido Luis
Millán de casa de Inés Castro?—Test.—Todavía.' (Vide Transcript,
p. 29.)—Con el mismo testigo: Juez.—Pero la declaración de us-
ted es verdad, ¿no es un cuento?—Test.—La declaración mía es
verdad, ¿cómo voy yo a decir una mentira aquí?—Juez.—Eso que
dice, ¿no es una invención suya?—Test.—No señor, que ocurrió.'
(Transcript, p. 30).—Declarando la testigo de cargo Juana Rodrí-
guez Ramos:—Juez.—Dígame una cosa, ¿usted dice que era coma-
drona?—Test.—Sí.—Juez.—Las comadronas en los barrios apartados
de la población son las madrinas de casi todos los muchachos que
partean?—Test.—Como se les pone agua seguido.—Juez.—No es po-
nerle agua a una niña bautizarla?—Test.—Bautizarla, y si se muere
se puede llevar a enterrar.—Juez.—¿Por eso las comadronas son las
madrinas de todos los muchachos?—Test.—De todos los muchachos
que recogen.—Juez.—¿Esa es la costumbre en Puerto Rico?—Test.
—La costumbre en Puerto Rico, y se respeta a ese compadre como
el que va a la puerta de la Iglesia.—Juez.—¿Usted no podría ca-
sarse hoy con ninguno de esos ahijados?—Test.—Así es.—Juez.—
¿No podría casarse con ningún ahijado?—No, hombre.' (Transcript,
p. 44 y 45.)   Declarando el testigo de defensa Juan Alicea:—'Juez.
—Dígame los hijos que tuvo Claudina desde el primero hasta la úl-
tima.—Test.—Tuvo un varón que no sé como se llamaba.—Juez.—
¿Rafael?—Test.—No sé, María Asunción, Elisa Salvador, y uno que
tiene chiquito, que lo tuvo cuando yo estaba en la escuela.—Juez.—
¿Cómo se llaman los otros cinco?—Test.—Ese otro último que tuvo
no sé cómo se llama.—Juez.—¿Ni sabe de los otros cinco?—Tuvieron
diez.—Test.—No sé como se llamaban.—Juez.—Orden de fecha de
nacimiento de esos muchachos; ¿qué día nació Rafael?—Test.—Eso
no sé decir, el día que nació.—Juez.—¿Y María Asunción?—Test.
—Me parece que nació en el mes de . . .—Juez.—¿Y Salvador?—
Test.—No sé.—Juez.—Y esta muchacha Elisa?—Test.—Tampoco.—
Juez.—¿Y los otros seis muchachos?—Test.—Esos no los conocí yo.'
(Transcript, p. 53.)   Con el mismo testigo: 'Juez.—¿Qué edad te-

nía Elisa cuando la madre le daba el pecho?—Test.—Tenía como un par de meses.—Juez.—¿Y estaba nacida cuando murió la primera esposa?—Test.—Eso mismo.—Juez.—¿Y estaba nacida cuando regresó la segunda esposa?—Test.—Sí señor estaba nacida.—Juez.—¿Y usted recuerda ese dato?—Test.—Sí señor.—Juez.—¿Por haberla visto antes?—Test.—Por haberla visto.—Juez.—Al pasar por la escuela haberla visto pegada al pecho de la madre?—Test.—Cuando murió doña Adela, fuimos a tomar agua . . .—Juez.—Hay una diferencia de tres años entre la muerte de la primera esposa más o menos y el regreso de la segunda, y sin embargo estaba nacida en la primera y al regresar Marrero con la segunda esposa, después de haber enviudado y casarse en España, es decir, haber mediado tres años, la ve pegada al pecho de la madre, de dos meses de nacida? —Test.—Pero fué cuando murió la esposa de don Celedonio.—Juez. —Eso no fué lo que usted había dicho.—Test. . . .—Juez—De modo que cuando usted la vió pegada de la madre, de dos meses de nacida, fué cuando murió doña Adela?—Test.—Sí señor.—Juez.—¿En el 1917?—Test.—En el 1907, cuando murió la señora.' (Transcript, p. 54.)—Declarando otra vez el testigo Adelis Hernández:—'Abog. —¿Y tú no dijiste nada?—Test.—No dije nada.—Abog.—El que habló allí no fué más que el acusado?—Juez.—(interrumpiendo)— Ya declaró lo que él dijo al hacerle las preguntas; ahora, si cree que es algo más.—Abog.—He traído a este testigo para impugnar la declaración de aquellos dos.—Juez.—El testigo es un arma, que a veces se dispara para un lado y otras para otro, y hay veces que se dispara por la culata.' (Transcript, p. 62.)

"Al ser llamado el acusado a declarar:—'Juez.—Acusado: Le voy a hacer las advertencias legales siguientes: que tiene el derecho constitucional para quedarse callado, no está obligado a hablar, pero si quiere declarar entonces tiene que producirse con la misma verdad y certeza de un testigo cualquiera, y le advierte también la corte que si de su declaración el Fiscal puede sacar algún elemento de prueba contra usted, tiene el derecho de hacerlo. Ahora, ¿usted quiere declarar?—Acus.—Sí señor.' (Transcript, p. 63.)

"Declarando el Fiscal, quien fué llamado a la silla de testigos por el acusado:—'Juez.—Usted no lo utilizó como testigo del Pueblo de Puerto Rico en el sentido técnico de la palabra?—(Se refiere al testigo de cargo Adelis Hernández.)—Fiscal.—No.—Juez.—No le ofreció sacarlo del proceso si él declaraba en esta forma o aquélla? —Fisc.—Yo no le ofrecí nada, yo no lo ví a él hasta el día que se presentó ante el Gran Jurado, que él había hecho la declaración vo-

luntaria, antes del Juez recomendarme que se soltara ya él había hecho la declaración voluntaria.' (Transcript, p. 66.)''

El derecho de un juez de distrito a participar en el examen de los testigos, siempre que tal derecho se mantenga dentro de los límites razonables de una sana discreción judicial, no puede negarse y ha sido uniformemente sostenido por esta corte. En ausencia de presentar objeción o tomar excepción un ligero exceso en este respecto no garantizaría que se revocara la sentencia.

Sin embargo, el conducir un caso por parte del Pueblo, especialmente en juicios por jurado, debe dejarse al fiscal. De lo contrario una intervención excesiva por parte de la corte en el curso general de las preguntas y comentarios hechos a favor de la acusación, produciría prejuicio en la mente del jurado contra el acusado y cuando se considera en relación con otras circunstancias del caso podría conducir a la conclusión inevitable en apelación de que el acusado no se le dió un juicio justo e imparcial.

La edad de la perjudicada no solamente era la questión más vital en el presente caso sino también la más dudosa. El principal testigo de cargo sobre este punto fué la partera, quien a causa de su avanzada edad no había podido durante muchos años actuar como tal. Esta señora asociando el nacimiento de la perjudicada con otro nacimiento que ella dijo ocurrió casi al mismo tiempo, cuya fecha en cambio aparecía en el Registro Civil, suministró un elemento muy esencial de certeza en un aspecto muy importante del caso para el gobierno. Posteriormente la defensa valiéndose de un método parecido trató de probar que la perjudicada tenía más de quince años de edad. Con este fin se llamó a Juan Alicea a la silla de los testigos. Ciertamente el conflicto entre la declaración de este último testigo y la de la partera fué un factor importante, si no el factor dominante, en este estado del caso. Bajo estas circunstancias el contraste marcado entre la consideración demostrada a un testigo y la actitud agresiva asumida con el otro de estos dos

testigos por parte del juez en presencia del jurado se hace llamativa.

El hecho de que un testigo de la defensa sea un juguete en manos del abogado del acusado ordinariamente no se escapa a la atención del jurado, pero si se escapara esta cuestión sería cubierta por el fiscal en el curso de su argumento. No necesita el énfasis adicional de un comentario agresivo del juez sentenciador.

Al acusado se le había informado de su derecho a declarar, pues se preparaba para ocupar la silla de los testigos. Estando representado por un abogado competente aparentemente el acusado no tenía necesidad de que se le diera consejo respecto al riesgo que corría. La situación en que se le colocó era bastante difícil sin el embarazo adicional de una evidencia solemne acerca de la naturaleza de la prueba a que se le sometería al ser repreguntado.

Sin embargo, el examen de repreguntas no fué tan drástico como pudo habérseles hecho creer al acusado y al jurado. Es como sigue:

"Repreguntado por el Fiscal: 'Conozco a Adelis Hernández, él iba en el truck, él se quedó en el truck y yo me vine con Ernesto Castro y Felipe Rivera a mi casa, la dejé sola porque yo no sabía en lo que ella quedaba . . . . como ella se quedó allí.'

"Juez:—¿Usted vive cerca de allí?—Testigo:—Como a un kilómetro de casa de don Inés Castro.—Juez:—¿Usted no podía, darle alojo a esa niña en su casa?—Testigo:—No me dijo nada, ella se quedó allí.—Fiscal:—¿Usted la dejó allí abandonada?—Testigo:—Seguro.—Fiscal:—¿Usted sabía para dónde ella iba?—Testigo:—Ella dijo que iba . . . . del peñón de donde la cojimos fué hasta ahí, pero no dijo para donde iba.—Fiscal:—¿No le preguntó para dónde iba? —Testigo:—Tampoco.—Fiscal:—¿A qué hora era éso?—Testigo:— Eso era como . . . . cuando llegamos a casa de don Inés Castro de once a once y media.

"Juez:—¿Don Inés vive con su esposa?—Testigo:—Sí señor.— Juez:—No se le ocurrió llamar a don Inés y decirle 'aquí hay este caso'?—Testigo:—Resulta que yo, seguido que me dieron la razón, me fuí para mi casa, no sé nada más."

La prueba en total hasta este estado del caso no era tal que hiciera que en la mente del jurado existiera simpatía por el acusado. Como ha dicho el abogado del apelante, la vista de este caso se celebró en una época cuando los casos de Arrocho y Clemente aún estaban frescos en la mente del pueblo. Bajo estas circunstancias la mejor práctica hubiera sido evitar cualquier insinuación innecesaria del deber que tenía el acusado de adivinar lo que estaba en la mente de sus compañeros o de anticipar futuros acontecimientos y de proveer alojamiento y alimentos a la perjudicada. *El Pueblo* v. *Ruiz,* 34 D.P.R. 531.

[3, 4] El acusado solicitó que se dieran al jurado ocho instrucciones especiales, las que fueron rehusadas por el juez de distrito basándose en que habían sido incluídas en sus instrucciones generales. Transcribiremos las primeras siete de estas supuestas instrucciones especiales:

"1.—Que en un delito de violación técnica, como el presente, es necesario probar fuera de toda duda razonable, la edad de la presunta víctima.

"2.—Que si el jurado tiene dudas con respecto a la edad de la ofendida, debe absolver al acusado.

"3.—Que si resulta no probada satisfactoriamente la edad de la presunta ofendida, el jurado debe absolver al acusado.

"4.—Que la declaración de la ofendida debe estar corroborada en sus hechos esenciales, para conectar al acusado con el delito, no siendo suficiente corroboración la declaración del médico sobre el hecho de la desfloración.

"5.—Que de acuerdo con el artículo 253 del Código de Enjuiciamiento Criminal, no procede la convicción por declaración de un cómplice, a no ser que ésta sea confirmada por alguna otra prueba que, por sí misma y sin la ayuda del testimonio del cómplice, tienda a demostrar la relación del acusado con la comisión del delito; no siendo suficiente dicha corroboración si sólo prueba la perpetración del delito o las circunstancias del mismo.

"6.—Que el jurado es el único juez para determinar si un testigo es o nó un cómplice.

"7.—Que en estos casos, el testigo actúa bajo promesa de inmunidad; y que, si bien es cierto que esta promesa es siempre negada por el cómplice, su existencia se sospecha siempre."

Las instrucciones dadas en cuanto pertinentes a la cuestión aquí envuelta, fueron como sigue:

"En este caso hay dos cuestiones que necesariamente ustedes tienen que analizar para traer un veredicto de culpabilidad; primero, que la niña fué desflorada. En esta cuestión, y para refrescar vuestra memoria, deben examinar lo siguiente: la declaración del perito médico que reconoció a la niña y la encontró desflorada recientemente. Corroboración: las manchas de sangre, que allá en el barrio de Bartolo la vió Quiles al salir el sol por aquellas montañas, aquellas manchas de sangre que pudo ver Quiles, deben ustedes investigar si esas manchas de sangre son o nó corroboración de la desfloración. Ustedes deben tener en cuenta e investigar, si las manifestaciones que dice José Pérez, aquel sereno del rolo, que en el barrio de Bartolo cuidaba el rolo de apisonar la carretera, si esas manifestaciones de José Pérez al decir que oyó al acusado decir 'anoche dió la sangre al cuello y me cansé de hacer ésto,' y cuando la niña se quejaba de que no podía aguantarlo le decía 'abre las piernas para sacártelo y en vez de sacárselo se lo metía más,' deben considerar si esas manifestaciones del acusado, dichas a presencia de José Pérez, son o nó una corroboración de la desfloración de la muchacha.

"Para este extremo ustedes deben tener presente también la declaración de Adelis Hernández. Este Adelis Hernández supone el acusado que abusó de ella, y yo quiero hacerles algunas consideraciones legales respecto a la declaración de este testigo. Este testigo deben ustedes tener en cuenta su declaración. ¿Será posible que este testigo sea anulado en su declaración por el hecho de que concurrió también a cometer, él por su parte, otra violación? Y la corte concluye instruyendo a los señores del jurado, que es una declaración que ustedes tienen que tener en cuenta, primero, porque no es un cómplice. Cómplice es un individuo que concurre en la comisión del mismo delito, no de un delito inmediatamente posterior de la comisión de un delito cualquiera, tiene que ser por ejemplo, cómplice de haberse robado estos Estatutos en la Corte de Distrito, si no el que se los robó, el que los cogió en la mano o está presente en la entrada velando al policía para avisar al otro; pero no es cómplice si después de haber entrado el otro y de haberse llevado estos Estatutos, entra después y se lleva este jarro, u otros Estatutos, o se lleva estos mismos estatutos que ha dejado el primer ladrón escondidos para después llevárselos, ése no es un cómplice, es autor de otro delito igual, y el que viola una niña después que otro lo ha

hecho, es autor de una violación suponiendo que la haya violado. No es un cómplice, pero vamos a suponer que era un cómplice, y entonces la ley admite que El Pueblo de Puerto Rico lo coja de testigo en aquellos casos en que la evidencia es corta, la ley autoriza a coger ese testigo y ofrecerle inmunidad para que declare. Ha sucedido esto aquí? No ha sucedido. No ha sido necesario que el Pueblo ofrezca inmunidad, sino que el mismo Adelis Hernández a los dos días del arresto declara lo ocurrido con la niña ésta en relación a este acusado o sea *al delito cometido por Francisco Acevedo.* Suponiendo que fuera un cómplice, necesitaría según la ley corroboración esa declaración del cómplice. ¿Está corroborada la declaración de Adelis Hernández? ¿Las manchas de sangre son una corroboración? Las manifestaciones del acusado al día siguiente de cometido el delito, allí en el barrio de Río Prieto, frente a la casa de don Inés Castro haciendo alarde de que aquella noche habían gozado de lo lindo, ¿son o nó una corroboración de la declaración de Adelís Hernández, que no se puede creer? Uds. tienen que tener en cuenta la declaración de Adelís Hernández de cualquier manera, como cómplice, como autor o como testigo independiente en el asunto, porque sus declaraciones para Uds. tenerlas en cuenta han de ver si están corroboradas o nó. Deben tener en cuenta también si el Dr. Sein corrobora la declaración de Adelís Hernández, diciendo que la niña había sido desflorada en un término de 24 a 48 horas; si las manchas de sangre son o nó una corroboración de Adelís Hernández que dice que estaban manchadas las ropas de sangre; si las manifestaciones del acusado a Quiles y al barbero aquella mañana, alabándose de haber tenido contacto carnal con esta niña, y de que ella se quejaba de que no lo podía aguantar y entonces le mandaba a abrir las piernas para empujárselo más, si son o nó una corroboración de la declaración del cómplice suponiendo que fuera un cómplice, o traído por el Pueblo de Puerto Rico bajo ofrecimiento de inmunidad para que declarara, aún, suponiendo todo ésto, tienen que apreciar esta declaración; pero de la prueba practicada aquí ha aparecido que este muchacho ha declarado espontáneamente, sin necesidad de ofrecimientos, y tienen que tener esa declaración presente y apreciarla con el resto de la prueba, sin necesidad de ir a determinar si hubo o nó ofrecimiento de libertad, y si estuvo o nó corroborada. La otra cuestión, Sres. del jurado, es que lleguen Uds. a la conclusión de que la niña es menor de catorce años, y si la prueba del Fiscal es suficiente para considerar que esa niña tenía menos de catorce años o nó es suficiente. La prueba del Fiscal es una prueba autorizada por la ley en defecto de la partida

de nacimiento que es la mejor prueba. A falta de.esa mejor prueba cualquier otra prueba es admisible, lo único que Uds. tienen que resolver ahora, ya que la corte la admitió, es si es suficiente. La declaración de la partera es la siguiente: que parteó a una niña en aquel barrio, de una vecina, un mes antes de haber parteado a la madre de Elisa Vélez, y la documental que presenta el Fiscal probando que esa niña llamada Prudencia Ruiz no tiene los catorce años. Si no tiene los catorce años, habiendo nacido un mes antes que Elisa, Elisa no puede tenerlos. Si Uds. admiten esa declaración como verdad, tienen que llegar a la conclusión de que la niña fué desflorada no teniendo catorce años. Uds. no tienen que apreciar para nada la violencia en este caso, sino para corroboración del delito. Ahora en cuanto a la manera de apreciar la evidencia Uds. son los jueces. Hay dos clases de evidencia: directa e indirecta. La directa es aquella que prueba un hecho directamente, y la prueba indirecta o circunstancial es aquella que prueba un hecho indirectamente, es decir probando un hecho que está tan íntimamente relacionado con el primero, que lo da a entender de una manera que no deja lugar a duda razonable. Lo que se necesita tanto en una prueba como en otra es que lleve el convencimiento .al ánimo del jurado sobre la culpabilidad o inocencia del acusado. No es necesario que sea una evidencia de tal naturaleza que excluya la posibilidad de error; eso no sucede en la vida corriente del mundo, no hay tal cosa, lo que se necesita es que Uds. crean por virtud de la evidencia practicada ante Uds. si la culpabilidad del acusado es suficiente para condenarlo o creen que no es suficiente, para absolverlo. La evidencia circunstancial es tan buena como la evidencia directa, lo que se necesita es que los diversos elementos de prueba circunstancial sean de tal naturaleza que lleven directamente al jurado a la conclusión de que el acusado no es culpable, y que no falta ninguno de los eslabones de la cadena que encierren al acusado en un círculo de hierro, para demostrar su culpabilidad, o que encierran al Fiscal en un círculo de hierro para impedirle demostrar su acusación y surge de las mismas declaraciones del proceso la inocencia del acusado. Se presume que todo testigo dice la verdad mientras no se pruebe lo contrario, pero un testigo puede errar en parte de su declaración y no por eso llegar a la conclusión el jurado de que está mintiendo voluntariamente; puede errar en parte de su declaración, repito, o puede haber olvidado algún dato, de modo que en todo esto Uds. son los únicos jueces. La manera de portarse un testigo en la silla, su candor, su buena fe, el temblor que tenga, la manera de expresarse, Uds. son los jueces para apreciar todo eso,

y pueden apreciar que un testigo está diciendo la verdad y llegar a la culpabilidad del acusado contra la declaración de 25 que están diciendo lo contrario y que no les merecen ningún crédito. Se presume que el acusado es inocente mientras no se pruebe su culpabilidad fuera de toda duda razonable, y duda razonable es aquel estado de la mente en que queda el jurado, cuando después de practicada toda la prueba, no llega a ninguna de las conclusiones de culpabilidad o inocencia del acusado. El acusado puede declarar en su propia causa y Uds. deben apreciar esa declaración con el resto de la prueba, teniendo en cuenta el interés que tiene en salir bien en el proceso, pero él está obligado a producirse con verdad como cualquier otro testigo.''

Luis Acevedo, Luis Millán, Francisco Acevedo y Adelís Hernández, la noche en cuestión viajaban en un camión perteneciente a Ernesto Castro, con dirección a la casa de Inés Castro, padre de Ernesto. La perjudicada fué recogida en el camión y conducida al sitio donde el camión se paró cerca de la casa de Inés Castro. Ella ibá en el asiento delantero entre Luis Acevedo, que iba a cargo del camión, y Luis Millán, el chauffeur. Francisco Acevedo y Adelís Hernández iban en la parte trasera del camión.

La perjudicada dice que cuando el camión se paró Luis Acevedo se fué y que ella fué violada por Luis Millán, Francisco 'Acevedo y Adelís Hernández en el orden en que han sido nombrados. También dice que Millán desapareció después de haber cometido la ofensa pero que el apelante y Hernández durmieron en la parte trasera del camión. Ella parece haber pasado la noche en el asiento delantero del camión e insiste en que vió a Hernández y al acusado dormidos cuando ella despertó por la mañana.

Ernesto Castro dice que se encontró con el camión cuando éste llegó a la casa de su padre y que acompañó a Francisco Acevedo a su casa; que Luis Acevedo se fué a acostar inmediatamente en la casa de Inés Castro y que Millán, que vivía allí, le siguió; que Adelís Hernández se quedó encargado del camión; que Hernández y la perjudicada se quedaron en él.

Otro testigo alega haber acompañado a Castro y al acu-
sado a la casa de este último.   El acusado también dice que
Hernández se quedó en el camión cuando salió acompañado
de su cuñado y Castro.   Hernández dice que siguió a Mi-
llán y a la perjudicada hasta un sitio donde ellos doblaron
por un callejón y que él fué un testigo ocular como por espa-
cio de una hora de lo que ocurrió cerca del camino; que
después de regresar al camión él observó como durante tres
cuartos de hora la conducta y los hechos que él le imputa
al acusado.

Tanto Pérez, el sereno, y Quiles, el barbero, declararon
que a la mañana siguiente Hernández se jactaba alegre-
mente de haber tenido comercio carnal con la perjudicada.

De la declaración dada por el Fiscal cuando fué puesto
por la defensa en la silla de los testigos, hacemos la si-
guiente cita:

"Abogado:—¿Quiénes eran las personas acusadas de ese hecho?
—Fiscal: Le voy a explicar: me llamó el Juez Municipal de Lares
y me dijo de un caso terrible que se había cometido, que es el acto
que se está investigando en esta Corte, que había tres personas, tres
presuntos acusados, y me explicó el caso de los tres.   Entonces me
dijo que uno de ellos era un muchacho jovencito, enfermo, y que
ya había declarado, y que él entendía que la prueba era muy floja
contra él; que la declaración de él era muy buena y que en vista
de que él estaba delicado de salud, y además que para su entender
estaba tísico el muchacho, que qué yo creía del caso; entonces le
dije que investigara si ese muchacho tenía más de diez y seis años
o nó, porque su Señoría sabe que si tenía menos de 16 años, no se
podía acusar sino mandarlo a la Escuela Correccional, y me dijo
que a su entender tenía menos de diez y seis años, que contra él la
prueba era muy floja, que la declaración de él era muy buena co-
rroborada en todos sentidos, y entonces yo le dije que si era así, que
podía soltar al muchacho éste y aumentarle la fianza a esos dos acu-
sados.   Después Su Señoría vino a mi oficina, dijo que era repre-
sentante de ellos, me habló y me indicó y demás, y yo le bajé la
fianza a instancias de Su Señoría.

"Abogado: Pero es el caso que Su Señoría le exigió la cantidad
de tres mil pesos de fianza a cada acusado?
"Testigo: Me parece que al chiquito yo no lo hice, no estoy se-

guro.—Abogado: Tenga la bondad de ver el récord.—Testigo: **En**
el récord éste es que aparece la orden de arresto expedida por el
Juez Municipal.—Abogado: ¿Contra quién?—Testigo: Contra los
tres, en la cual le exige $1,500, después de esto me hice cargo del
caso y entonces aumenté a estos dos hombres la fianza, a éste que
Ud. defiende ahora y a Luis Millán.—Abogado: ¿Y al otro acu-
sado?—Testigo: Al otro acusado me parece que no se la aumenté,
es mas, me parece que entonces, de acuerdo con la comunicación
.del juez, le dije que lo soltara.''

No es nuestro propósito ahora demostrar que Hernán-
dez era un cómplice. Si había alguna prueba en qué basar
una conclusión a este respecto, ésta era una cuestión para
el jurado. Por tanto, al jurado se le debió decir que tenía
que resolver si Hernández era o nó un cómplice; y si era
un cómplice, si su declaración había sido o nó corroborada.
Desde luego incumbía a la corte explicar el significado de
la palabra cómplice, según su uso en el estatuto que re-
quiere que la declaración de un cómplice sea corroborada,
indicar la clase de corroboración requerida e insinuarle qué
podía considerarse como tal corroboración en caso de que
el jurado creyera a los testigos que declararon con respecto
a las cuestiones así indicadas.

No discutimos la proposición de que ''personas que, sin
estar de común acuerdo, cometen varios delitos al mismo
tiempo, no son cómplices uno del otro.'' *16 C. J. 676.*

Convenimos con la corte inferior en que la violación de
la perjudicada por Hernández inmediatamente que Acevedo
cometió un delito similar no haría, sin nada más, que Her-
nández fuera un cómplice. Pero la cuestión envuelta no so-
lamente pasa por alto todos los otros hechos y circunstan-
cias sino que también asume como un hecho un acto de co-
mercio carnal anterior por parte de Acevedo. A menos
que Millán o Acevedo hubieran cometido el delito de viola-
ción, Hernández no *pudo haber cometido* ''otro'' delito
pero era culpable del delito que se le imputaba al acusado,
y el acusado en realidad sería a lo sumo un mero accesorio
antes del hecho, aunque técnicamente y según el estatuto

sería un co-autor. Por tanto, la cuestión de si Hernández cometió o nó otro delito sin haber participado en forma alguna en el delito imputádole al acusado, siendo un factor principal en la cuestión de complicidad *vel non,* era tanto una cuestión para el jurado como la complicidad misma.

En ausencia de una definición adecuada de la palabra cómplice, o de una explicación de la regla que requiere que la declaración de un cómplice sea corroborada, las instrucciones según fueron dadas dejaron al jurado inferir que prueba de penetración simultánea por parte de dos co-autores es necesaria para demostrar complicidad en el delito de violación. Nuestro estatuto tampoco requiere que el fiscal haga una oferta de inmunidad aunque el confiar o esperar tal inmunidad es desde luego teóricamente la base de la regla estatutoria. Además en el presente caso fuera de la declaración del mismo Hernández al efecto de que el juez municipal no le hizo ningún ofrecimiento para que fuera testigo del Pueblo, no hay absolutamente nada que demuestre la naturaleza o el número de entrevistas tenidas por Hernández con el alcaide de cárcel, con la policía y con el juez municipal. Hernández dice que pasó cinco días en la cárcel y que hizo su declaración a fin de obtener su libertad después que sus compañeros habían salido bajo fianza. Entonces el juez municipal al comunicar el asunto al fiscal le llamó la atención en cuanto a la corta edad y aparente estado de tuberculosis del detenido y le indicó que éste había dado una buena declaración. Entonces el fiscal dió orden al juez municipal de poner en libertad al detenido.

El hecho incontrovertido en el caso al tiempo de darse las instrucciones al jurado era que Elisa Vélez había perdido su virginidad. Admitiendo para los fines del argumento que se demostró que la perjudicada era menor de edad, entonces también se estableció el *corpus delicti.* También hubo prueba tendente a demostrar que Luis Acevedo y Millán al llegar a la casa de Inés Castro inmediatamente se fueron a acostar y que el acusado también se fué, de-

jándo a Hernández en la carretera o en el camión con la perjudicada. Hay prueba tendente a demostrar que a la mañana siguiente Hernández admitió haber tenido comercio carnal con la perjudicada durante la noche. Si es cierto este testimonio Hernández no cometió otro delito sino que era culpable del delito que él le imputa al acusado. Si el nombre de Hernández se hubiese sustituído por el de Acevedo en la acusación, bajo la teoría de que se había cometido un sólo delito Hernández pudo haber sido convicto del delito imputádole al acusado, y esta convicción pudo haberse obtenido con y sostenida por la prueba aducida en este juicio, con o sin la declaración de Hernández. La corte no tenía derecho a excluir de la consideración del jurado la teoría de que se había cometido un solo delito y de sustituirla arbitrariamente por la hipótesis de un doble o triple delito, como la única y exclusiva base para su deliberación.

Bajo la teoría de que se hubiera cometido un doble delito incumbía al jurado determinar si hubo o nó acuerdo entre los autores. Al jurado correspondía decidir si Hernández fué sólo un mero espectador, un circunstante inocente, o si él estaba de guardia mientras se paseaba por el camino y alrededor del truck por espacio de dos horas o más, o si en alguna otra forma, mientras esperaba que llegara su oportunidad, ayudó, instigó, o indujo los actos que él le imputa al acusado. Y con el fin de llegar a una conclusión a este respecto al jurado se le debió dejar en libertad para considerar todos los hechos y circunstancias del caso, incluyendo la violación de la perjudicada por parte de Hernández, si el jurado creía que Hernández era culpable del otro delito subsiguiente.

Nuestro estatuto igualmente prohibe que se declare convicto a un acusado del delito de violación con la sóla declaración no corroborada de la mujer agraviada. De manera que la regla que requiere la corroboración de la declaración de un cómplice se ha ampliado en esta jurisdicción a incluir el testimonio de la perjudicada en esta clase de delitos

así como en otros delitos sexuales específicos. No simpatizamos con estas disposiciones legislativas. El inciso 8 del artículo 233 del Código de Enjuiciamiento Criminal según fué enmendado en 1911, Comp. de los Estatutos Revisados, sección 6265, interpretado debidamente y puesto en práctica por las cortes de distrito darían amplia protección al acusado en casos de esta naturaleza y al mismo tiempo haría que se obtuviera la convicción del culpable en muchos casos que no caen dentro del razonamiento de la regla que requiere corroboración. Pero el derecho de derogar o enmendar el requisito infranqueable y absoluto de corroboración en los casos enumerados en el Código de Enjuiciamiento Criminal es una cuestión que queda a la discreción de la Legislatura más bien que a la de las cortes. Mientras estas leyes permanezcan en nuestros códigos deben ser respetadas y puestas en vigor al ser invocadas por un acusado.

En el presente caso al jurado se le dijo en cierto número de palabras que era necesario determinar tan sólo dos cuestiones, primera, si se había cometido o nó en la persona de la perjudicada el delito de violación; y segundo, si la agraviada era menor de catorce años.

Se admitió que era necesario corroboración respecto al *corpus delicti,* pero no se puede hallar indicio claro al efecto de que la declaración de la perjudicada debe ser corroborada por otra prueba tendente a relacionar al acusado con la comisión del delito. No hay, desde luego, falta de tal prueba. Pero el jurado estaba en libertad de creer o nó la declaración de los testigos que corroboraban la de la perjudicada en lo que la misma tendía a identificar al acusado como culpable del delito. Aunque la declaración del sereno respecto a las admisiones hechas por el acusado, y la del supuesto cómplice como un testigo ocular, han sido rechazadas por el jurado, sin embargo de acuerdo con las instrucciones de la corte un veredicto de culpabilidad hubiese sido permisible y propio.

Ciertamente que las instrucciones solicitadas por el acusado respecto a la necesidad de corroboración y a la clase de corroboración requerida en lo que al testimonio de la perjudicada se refería, no están incluídas en las instrucciones dadas por la corte.

Igualmente es cierto esto en lo que se refiere a la instrucción solicitada en cuanto a la necesidad de probar la edad de la perjudicada fuera de duda razonable. Es cierto que se llamó la atención al jurado sobre la presunción de inocencia y la necesidad de probar la culpabilidad del acusado fuera de duda razonable. Pero duda razonable se define como ese estado de la mente en que se encuentra el jurado (o un jurado) cuando después de ver toda la prueba, el jurado (o un jurado) no puede llegar a una conclusión respecto a la culpabilidad o inocencia del acusado. Aparentemente duda razonable podría surgir tan sólo en el caso de que el jurado no pudiera llegar a un acuerdo o de que a un jurado le fuese imposible decidirse respecto a la culpabilidad o inocencia de un acusado. Pero sea esto como fuere, de lo que aparece de las instrucciones dadas una ligera preponderancia de la prueba respecto a la edad o respecto al asunto principal sería suficiente para garantizar y sostener un veredicto de culpabilidad.

Una objeción más seria a las instrucciones es que no se presenta en absoluto al jurado la prueba de la defensa. No sólo se resume la prueba de cargo sino que se presenta desde el principio hasta el fin en forma de un fuerte argumento desde el punto de vista del fiscal, más bien que desde el punto de vista de un juez presidente exento de prejuicio e imparcial. La única referencia hecha a la prueba de la defensa es la admisión del derecho del acusado a declarar en relación con la advertencia de que él no es un testigo desinteresado. Pero pasa enteramente por alto el hecho de que su declaración en unión de la de por lo menos otros dos testigos al ser creídas por el jurado serían suficientes para establecer una coartada.

Desde luego no se presenta objeción a la manifestación de que la declaración del acusado debe considerarse del mismo modo que la de cualquier otro testigo del caso tomando en consideración su interés natural en el resultado del juicio. La forma en que se dispone de la declaración del acusado se menciona solamente como contraste a la manera en que se presenta la declaración de Hernández a la consideración del jurado no obstante su natural interés en que el gobierno no siguiera el caso contra él.

La cuestión de complicidad, como ya se ha dicho, se hace depender de la proposición de que si hay un intervalo de tiempo entre la comisión de dos delitos entonces la persona que comete el segundo delito no puede considerarse como un cómplice del primer delito. Claramente que si se lleva esta teoría a su conclusión lógica excluiría la posibilidad de que cualquiera de dos co-acusados pudiera considerarse como cómplice en cada caso de violación cuando el delito puede en realidad haber sido cometido por cada uno de tales co-acusados.

Las instrucciones en su totalidad no son las contempladas por el artículo 233 del Código de Enjuiciamiento Criminal cuyas palabras textuales son que el juez "hará un resumen del caso . . . . llamando la atención del jurado hacia la cuestión esencial a resolver y puntos principales en discusión, expresando cuál ha sido la prueba practicada para sostenerlos, con las observaciones que estime necesarias para el gobierno del jurado, y expresando su opinión solamente sobre las cuestiones de derecho que surjan de la prueba."

El acusado tenía derecho a que se instruyera al jurado por lo menos en substancia en el sentido indicado en las instrucciones especiales por él solicitadas y marcadas con los números del 1 al 7, *supra;* y nos es imposible estar de acuerdo con la opinión de que tales instrucciones especiales estaban debidamente cubiertas por las instrucciones generales al jurado.

En vista de las conclusiones a que hemos llegado **no** creemos necesario resolver otras cuestiones de menor importancia levantadas por el apelante pero que no ha discutido a fondo en el alegato. Los errores, de haber **alguno,** pueden evitarse fácilmente en un nuevo juicio.

*La sentencia apelada debe ser revocada y devolverse el caso para ulteriores procedimientos no incompatibles con esta opinión.*

VIOLACIÓN—PROCESO Y CASTIGO—JUICIO Y REVISIÓN—APELACIÓN—RESOLUCIÓN Y DISPOSICIÓN DEL CASO—REVOCACIÓN.—Cuando solicitada instrucción especial sobre la necesidad de que la declaración de la perjudicada debe estar corroborada aquella es denegada, si de las instrucciones generales dadas por la corte no aparece instrucción alguna respecto a la necesidad de tal corroboración, la sentencia apelada debe ser revocada.

OPINIÓN DEL JUEZ ASOCIADO SR. DE ALDREY, CON LA CUAL ESTÁ CONFORME EL JUEZ ASOCIADO SR. FRANCO SOTO.

Estoy conforme con la revocación de la sentencia y celebración de un nuevo juicio porque no apareciendo de las instrucciones generales que la corte dió al jurado la instrucción de la necesidad de que la declaración de la perjudicada debía estar corroborada en cuanto a la imputación que hace al acusado de la comisión del delito de violación, cometió la corte inferior el error alegado por el apelante en el 6° señalamiento de errores por haberse negado a transmitir al jurado la cuarta de las instrucciones solicitadas por la defensa del acusado, que dice así: "Que la declaración de la ofendida debe estar corroborada en sus hechos esenciales, para conectar al acusado con el delito, no siendo suficiente corroboración la declaración del médico sobre el hecho de la desfloración."

Estoy autorizado por el Juez Sr. Franco Soto para hacer constar que está conforme con lo expuesto por mí.

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. DEL TORO.

Estoy conforme con que las instrucciones de la corte al jurado fueron deficientes y erróneas, pero a mi juicio el

erro'r cometido no fué perjudicial al acusado. La prueba practicada fué de tal manera clara y completa, que el jurado no pudo ser influenciado por ninguna otra cosa que no fuera por la virtualidad de la misma. Hernández no es un cómplice. La declaración de la ofendida y la suya hubieran constituído amplia prueba. Pero hubo más; un testigo independiente, José Pérez Arroyo, trasmitió al jurado las propias manifestaciones del acusado que fueron hechas en forma tal que bien puede asegurarse que ningún jurado hubiera dejado de condenar con sólo oirlas.