EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EME-TERIO y VICENTE TIRADO, acusados y apelantes.

No. 3459.—*Visto:* Noviembre 20, 1928. *Resuelto:* Diciembre 10, 1928.

*Agustín E. Font,* abogado de los apelantes; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

Contra Emeterio Tirado, Vicente Tirado y Juan Tirado, se presentó por el fiscal de la Corte de Distrito de Ponce, una acusación por homicidio voluntario. Los acusados hicieron la alegación de inocentes; y el juicio tuvo efecto ante el tribunal del jurado. De las instrucciones que el juez de la corte dió al jurado, tomó la representación de los acusados varias excepciones, de las que se hará mención, en lo procedente, en esta opinión. El jurado rindió veredicto declarando culpables de homicidio voluntario a los acusados Emeterio Tirado y Vicente Tirado, y no culpable a Juan Tirado; y la corte condenó a los expresados Emeterio y Vicente Tirado a sufrir cinco años de presidio cada uno, y las costas. Contra esta sentencia se ha interpuesto la presente apelación.

La parte apelante señaló diez y siete errores. No es preciso considerar los diez y siete señalamientos; especialmente, porque el fiscal de este tribunal conviene en la existencia de algunos de esos errores, y en que los hechos en que se fundan los señalamientos ocasionaron que los acusados no tuvieran un juicio justo e imparcial.

■ Se ha señalado por los apelantes como tercer error, las manifestaciones y preguntas del Juez de la Corte de Distrito de Ponce al testigo Julio Irizarry (páginas 60 a 63 de la transcripción). Fueron éstas:

"Juez.—Usted ha prestado un juramento. Por lo que ha estado oyendo la Corte, observa que Ud. ha declarado aquí algo en relación a estos hechos que no concuerda con lo declarado ante el Hon. Juez Municipal de Guánica. La Corte observa que usted está ahí violento, que casi no puede hablar, y se le llenan los ojos con agua, como si quisiera llorar. R.—¿Yo? P.—Sí. R.—No, señor. P.—¿A usted le pasa algo? ¿Usted está enfermo? R.—No, señor. P—¿Usted se encuentra bien? R.—Sí, señor. P.—¿Usted no tiene nada que le impida físicamente prestar declaración? R.—No, señor. P.—¿Y moralmente? ¿Ha habido alguien que le haya dicho: 'Cuidado con lo que tú vayas a declarar allí?' R.—No, señor. P.—Dígamelo, y verá usted como se concluyen estas cuestiones. R.—No, señor. No señor.

No me han dicho nada. P.—¿Nadie lo ha intimidado? R.—Nadie. P.—¿Nadie le ha prometido a usted algo diciéndole: 'Si declara esto, le voy a regalar esto otro?' R.—Nadie; nadie. P.—¿Por qué enton- ces usted no se produce como debe producirse un testigo, con espon- taneidad, lo mismo que se produjo usted ante el Juez Municipal de Guánica? ¿Qué le pasa a usted? R.—Nada. P.—Hable con los se- ñores del Jurado. Diga qué es lo que usted sabe de estos hechos y cualquier cosa que le ocurra a usted, venga donde mí y venga donde el Fiscal. A usted no le pasará nada. ¡Ay del que se atreva a ha- cerle algo! Dígale a los señores del Jurado lo que pasó allí.''

Indudablemente, el fin perseguido era asegurar la pureza del testimonio. Pero el medio empleado era expuesto a que el jurado incurriera en error, e interpretara en el sentido de que la corte quiso establecer la poca veracidad del testigo en ciertos extremos de su declaración, y se dió por estable- cido que la primitiva declaración del testigo fué alterada. Esto influye al jurado. En el caso *El Pueblo* v. *Rodríguez,* 36 D.P.R. 427, ha dicho este tribunal:

''No podemos convenir con el apelante en que la prueba no ten- día a demostrar la comisión del delito, pero nos vemos obligados a resolver que la admisión de estas declaraciones fué un error perju- dicial para el acusado, ya que tendían en la forma indicada a arro- jar serias dudas sobre las declaraciones de estos testigos, quienes de- clararon a favor de la teoría de defensa propia y quienes no debe ol- vidarse fueron presentados por el fiscal.''

Existe el error señalado bajo el número tercero.

Cuando declaraba el testigo de la defensa Ventura Casiano (páginas 112 a 121 T. E.), el juez de distrito in- terrumpió al fiscal que contrainterrogaba, e hizo al testigo un interrogatorio (páginas 115 a 119 T. E.) en el que era materia de interés la declaración que el mismo testigo prestó ante el Juez Municipal de Guánica, declaración que se le recordó en detalle; y después dijo lo que sigue:

''La Corte le ha hecho a usted todas estas preguntas, y la Corte, después de haberlo oído a usted, entiende que ha cometido un delito de perjurio en Corte abierta, y haciendo uso de las facultades que le da la Ley para castigar el delito de perjurio cometido en Corte

abierta como desacato y para otros fines, lo procesa a usted y ordena su arresto, a no ser que preste una fianza de trescientos dollars, para que responda de un delito de perjurio en corte abierta, consistente en hacer ante esta Corte todas las manifestaciones completamente contrarias a las hechas por Ud. bajo juramento ante el Juez Municipal de Guánica. El taquígrafo sacará cópia íntegra de esta declaración prestada ante esta Corte de Distrito, ante el Jurado, a los efectos del delito de perjurio en corte abierta. Abogado.—Tomamos excepción de las manifestaciones de la Corte, porque de acuerdo con la Ley el jurado es el juez que debe resolver sobre la credibilidad de los testigos, si debe o no creer a dicho testigo, y al decir la Corte que este testigo ha cometido perjurio en corte abierta, está resolviendo sobre los méritos de su testimonio, y esto lo debe resolver el jurado únicamente; y esto lesiona los derechos de los acusados, que tienen derecho a un juicio imparcial.''

Ha sostenido este tribunal, el derecho del jurado para aquilatar, como único juez, la prueba, sin sugestiones que lo perturben en el acto de pronunciar su veredicto. Y ha declarado asimismo que no puede, bajo ningún concepto, hacerse entrever al jurado el juicio que cada uno de los elementos de prueba merezca al juez que comunica las instrucciones, ni es lícito sugerirles nada que tienda a desviar su criterio de lo que entiende honradamente que es justo e imparcial (El Pueblo v. Rodríguez, 11 D.P.R. 235).

En este caso, fué grave error este proceder del juez ante el jurado. Este, necesariamente ha tenido que sentir la influencia de lo ocurrido ante él, y ha tenido que sospechar gravemente de la declaración del testigo, cuya credibilidad no ha pasado íntegra y cabal a la apreciación del jurado, sino tachada por la declaración que ha hecho el juez. Las frases de éste, aunque proferidas con el mejor espíritu, invaden el campo de acción del jurado, penetran en la conciencia de los que le constituyen, y allí quedan, como un obstáculo a un juicio sereno e imparcial; juicio a que tienen derecho innegable los acusados.

Confirmamos la doctrina establecida por este tribunal, especialmente en el caso El Pueblo v. Acevedo, 35 D.P.R.

966, en lo que se refiere a la intervención del juez en los interrogatorios. No se niega el derecho del juez a intervenir en los interrogatorios; pero se afirma que, en los juicios por jurado especialmente, el fiscal debe conducir el caso por parte del Pueblo, y la intervención excesiva de la corte en el curso general de los interrogatorios, y los comentarios hechos a favor de la acusación producirán prejuicio en la mente del jurado contra el acusado, que no tendría un juicio justo e imparcial.

■ Siete errores (del décimo al décimo-sexto, inclusives,) se señalan a las instrucciones dadas por el juez al jurado. Reconocida la existencia de otros errores, suficientes para la revocación de la sentencia, no es preciso entrar en minuciosos detalles en cuanto a los demás. Indudablemente el juez fué, en algunos momentos en sus instrucciones, más allá de los límites naturales de éstas. No puede dudarse que su voluntad fué la de ayudar a la recta administración de justicia, pero la forma elegida no fué la más aconsejable. Las imprecaciones del párrafo que empieza con las palabras: "Oh, raza de Pilatos . . . ." y termina así: "como no habrías de continuar con vuestra obra," no pueden ser admisibles; el jurado tiene que sentirse, forzosamente, atemorizado; y no es ése el estado de espíritu más propio para llegar a un veredicto imparcial.

Por las razones expresadas, debe *revocarse la sentencia devolviéndose el caso* a la corte inferior, para ulteriores procedimientos no inconsistentes con esta opinión.