EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SANTOS MARTÍNEZ ACEVEDO, acusado y apelante.

*Número:* CR-62-238        *Resuelto:* 25 de abril de 1963

200

*Cristóbal Colón Flores,* abogado designado por el Tribunal Supremo para ofrecer asistencia legal al apelante en el recurso; *Rodolfo Cruz Contreras, Procurador General Interino, y José F. Rodríguez Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por su Presidente el Juez Asociado Señor Belaval y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

Santos Martínez Acevedo fue convicto de incesto, mediante juicio por jurado, ante la Sala de Arecibo del Tribunal Superior y sentenciado a cumplir una pena de 5 a 10 años de presidio. Apeló por su propio derecho y una vez presentados aquí todos los autos designamos al letrado Cristóbal Colón Flores para que le ofreciera la necesaria asistencia legal en el recurso. [1]

Señala como errores (1) el "someter a la perjudicada a continuos e injustificados interrogatorios aun antes de que el

---

[1] Dicho letrado ha realizado una buena labor en el desempeño de esa encomienda.

fiscal y el abogado defensor terminaran sus interrogatorios y (2) al negarle al abogado defensor la declaración jurada prestada por un testigo de cargo."

Ambos errores fueron clara y evidentemente cometidos con grave perjuicio del acusado y, consecuentemente, debemos concederle un nuevo juicio.

Se le imputó al acusado haber tenido comercio carnal con su hija Carmen María Martínez. Como generalmente ocurre en este tipo de casos, el testimonio de ella fue el único que realmente tendió a establecer el coito entre padre e hija.

I

Por el cuidadoso examen que hemos hecho de la transcripción de la evidencia oral nos hemos convencido de que el juez que presidió el juicio y que tenía la seria misión de conducirlo en términos de imparcialidad y justicia para ambos lados, de procurar que un solo fiscal tuviera a su cargo los interrogatorios o contrainterrogatorios que correspondieran a El Pueblo, y de que fuera el jurado el único organismo que resolviera las cuestiones de hecho, indiscutiblemente falló en esa misión. Nuestra conciencia ha quedado perturbada de nuevo[2] por la repetición del indeseable espectáculo de un juez que se une abiertamente en juicio al lado del fiscal y con el enorme peso de su autoridad ante el jurado, aplasta toda oportunidad de defensa del acusado a través de constantes e injustificados interrogatorios y pronunciamientos sobre los méritos de la causa, y que atemoriza al abogado defensor con comentarios impropios y perjudiciales ante el jurado.

Hagamos referencia a unas pocas de las muchas ocasiones en que intervino así el citado juez, valiéndonos del alegato del letrado defensor, que correctamente las presenta en la siguiente forma:

[2] Véase la opinión en *Pueblo* v. *Aletriz,* 85 D.P.R. 646 (Pérez Pimentel) (1962).

"El segundo testigo presentado por el fiscal fue la perjudicada, Carmen María Martínez Romero. Mientras el fiscal la interrogaba, el Juez interrumpió en varias ocasiones con preguntas tendientes a asistir al fiscal en su labor inquisitoria, y no con fines aclaratorios.

"A preguntas del Hon. Juez, declaró:

'P. ¿Oíste la pregunta?—Sí, señor.

'P. El te pide que le expliques al Jurado y a nosotros qué ocurrió cuando el hombre que fue a tu cama y que tú señales como que fue tu papá, qué pasó allí?—El señor me hizo el daño.

'P. ¿Te hizo el daño?—Sí, señor.

'P. ¿Cómo te hizo él cuando llegó a la cama, inmediatamente qué te dijo, si te dijo algo?—No me dijo nada.

'P. ¿Te echó los brazos?—Sí, señor.

'P. ¿Te besó?—No, señor.

'P. ¿Pidió que tú lo besaras?—No, señor.

'P. ¿Qué hizo él?—. . . (no contesta)' (T.E. pág. 12).

"Mientras el fiscal le preguntaba a la perjudicada que relatara lo que había ocurrido en la cama, el Juez vuelve a asumir su labor de fiscal con las siguientes preguntas:

"A preguntas del Hon. Juez, declaró:

'P. ¿Qué hizo él?—Se me acostó encima.

'P. ¿Tú abristes las piernas?—No, señor.

'P. ¿Qué pasó? . . . (no contesta)'— (T.E. pág. 13).

"Interroga el fiscal y vuelve el Juez a asumir su turno, sometiendo a la testigo, sin razón alguna que lo justificara, al siguiente interrogatorio:

"A preguntas del Hon. Juez, declaró:

'P. ¿Eso fue qué día?—el 24 de diciembre.

'P. ¿De este año que pasó?—Del 1960.

'P. ¿Cómo a qué hora era eso?—Como a las once de la noche.

'P. ¿Volvió esa misma noche?—No, señor.

'P. Y después ¿volvió?—No, señor.

'P. ¿Antes habían hecho eso mismo?—No, señor.

'P. ¿Y después de ese día?—Después, cuando la nena tenía cuatro meses.

'P. Entonces, ¿De esa unión de diciembre vino una niña?
—Sí, señor.

'P. Y después de venir la niña, ¿cuántos días después de haber venido la niña?—Cuatro meses.

'P. ¿A los cuatro meses siguió haciendo eso contigo?—Sí, señor.

'P. ¿Se venía para tu cama o tenían una cama de dormir juntos los dos?—Venía a mi cama.

'P. ¿Y realizaban eso tranquilamente?—. . . (no contesta)

'P. ¿Era de tu gusto?—No, señor.

'P. ¿Cómo tú lo permitistes si no era de tu gusto?—Porque no tenía a quién decírselo.

'P. ¿Y tus hermanitos? ¿Por qué no le pedistes auxilio a tus hermanitos?—Porque no me atrevía.

'P. ¿Por qué?—Porque me abochornaba, señor.

'P. ¿Cuando fuistes a dar a luz te abochornastes? Sí, señor.

'P. ¿Por qué volviste a hacer eso si te abochornaste? . . . (no contesta)'. (T.E. págs. 13–14.)

"El abogado defensor interrogó a la perjudicada tratando de desacreditar su testimonio ante el jurado. Basó su teoría en que la testigo había tenido relaciones concúbitas con otro hombre. Al preguntarle a la testigo si había quedado encinta de José Antonio Martínez, se opone el fiscal y 'fundamenta' el Juez:

'Hon. Juez: No hay razón para esas preguntas porque en el supuesto que la muchachita hubiera tenido relaciones con otro hombre, que fuera con más de una o más de dos o más de tres personas, no tiene nada que ver con la acusación ahora que es contra el padre de que tuvo contacto carnal con ella. De eso lo acusa el fiscal. No sería defensa, a nuestro entender, que esta muchacha tuviera relaciones con otro hombre o que le gustaran otros hombres. Lo que tenemos que investigar es si hubo la relación carnal entre el padre y la hija.' "

Entre otras cosas, dijimos en el citado caso de Aletríz: "Lo que el récord revela es que el Juez desempeñó en este caso con gran habilidad la misión que la ley reserva al fiscal." En ese caso concedimos un nuevo juicio aun cuando el error no había sido objeto de señalamiento, ni fueron debidamente objetadas en el tribunal a quo las actuaciones que lo motivan. Por ese fundamento, igualmente lo hicimos en *Pueblo* v. *Bartolomei*, 70 D.P.R. 698, 704 (1949); *Pueblo* v. *León*, 53

D.P.R. 429, 435 (1938); *Pueblo* v. *Acevedo*, 35 D.P.R. 966, 970 (1926).

## II

Después de terminado su contrainterrogatorio a la testigo principal Carmen María Martínez, el abogado defensor pidió al juez que ordenara al fiscal que le entregara la declaración prestada por esa testigo durante la investigación preliminar. Se opuso a ello el fiscal porque "Es muy tarde para hacer esa petición." (T.E. pág. 27) y porque "Es cuestión de seguir el procedimiento de ley." (T.E. pág. 28.) Se negó a ordenarlo el juez en los siguientes términos:

"La entrega de la declaración jurada es con el propósito de impugnar y para la impugnación hay que sentar ciertas bases. Luego, si tiene la declaración ahora, como no estableció las bases para impugnar, no puede." (T.E. pág. 28.)

Después de esa resolución se continuó el examen de esa testigo, pero, esta vez, y hasta su terminación, por el juez. (T.E. págs. 28–30.)

Respecto a la declaración de Luis Romero Medina, la defensa posteriormente hizo igual petición, pero el fiscal, sin esperar que se lo ordenase, la entregó. (T.E. pág. 47.)

En *Pueblo* v. *Ribas*, 83 D.P.R. 386 (Dávila) (1961), resolvimos que para que el acusado solicitara copia de cualquier declaración prestada por un testigo de cargo, no tenía que establecer previamente las bases de la impugnación. En *Pueblo* v. *Díaz Díaz*, 86 D.P.R. 558 (Dávila) (1962), reconocimos el derecho del acusado a pedirla respecto a testigos de cargo renunciados por el fiscal y utilizados por la defensa. Cf. *Pueblo* v. *Ramos Cruz*, 84 D.P.R. 563 (1962). La doctrina de esos casos no se opone a que el acusado disfrute de la oportunidad de solicitar y obtener la declaración anterior de cualquier testigo que hubiera declarado en el juicio, en cualquier momento del período de la práctica de las pruebas

y antes de someterse definitivamente al jurado el caso para su resolución.

*Debe revocarse la sentencia y ordenarse la celebración de un nuevo juicio.*