**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Melton EASTERLY, Defendant-Appellant.**

**No. 29491.**

United States Court of Appeals, Fifth Circuit.

May 24, 1971.

---

* The Honorable Alfred T. Goodwin, District Judge for the District of Oregon, sitting by designation.

Emmett Colvin, Jr., Fred Time, Dallas, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., Andrew Barr, Charles D. Cabaniss, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before JONES, BELL and SIMPSON, Circuit Judges.

JONES, Circuit Judge:

Appellant Easterly and three others were indicted for three offenses arising from the printing, possession and distribution of counterfeit Federal Reserve Notes of $10.00 denomination in the approximate face amount of $100,000. The first count charged the appellant and the others, Mackey Ingram, Robert Lamb and Thomas Fearn, with conspiracy to make and transfer counterfeit United States obligations in violation of 18 U.S.C.A. § 371. Count 2 charged Easterly, Ingram and Lamb with the substantive offenses of counterfeiting in violation of 18 U.S.C.A. § 472. Count 3 charged Easterly alone with the possession of counterfeit notes in the face amount of approximately $52,000. Easterly and Ingram were jointly tried before a jury. Ingram was found not guilty on each charge. Easterly was convicted of all charges. He was sentenced to five years on the conspiracy count and fifteen years on each of the substantive counts. All sentences were to run concurrently. It was provided that the defendant would become eligible for parole on each count under 18 U.S.C.A. § 4208(a) (2).

Defendant Lamb entered a plea of guilty prior to trial and testified as a prosecution witness. Defendant Fearn also appeared as a Government witness. The charges against Fearn were dismissed upon motion of the Government after Easterly was tried.

The Government's first witness was co-defendant Fearn who had been a professional lithographer for 29 years, and who had known Easterly for ten years. Fearn testified that Easterly had requested him to prepare some negatives for $10.00 bills. Easterly in a telephone call from Dallas, Texas, to Mobile, Alabama, urged Fearn to make the negatives. Fearn prepared the negatives and sent them to Easterly in Dallas. He subsequently talked to Pam Fike, a friend of Easterly, and requested her to tell Easterly the negatives were on the way and that Easterly should send him some money. Fearn received $400.00 in money orders.

The Government's second witness was co-defendant Lamb, who was a printer and long-time friend of Easterly and Ingram. He testified that he met with Easterly and Ingram and agreed to do the printing for one-third of the net proceeds; that Easterly and Lamb were to furnish the necessary materials. Lamb stated that he suggested a particular bond of paper and arranged to purchase it on the letterhead of a fictitious insurance company from a print shop owned by Clifford Hendricks, who was not a party to the enterprise. Lamb testified that he later received the negatives from which he made offset printing plates. Sample runs were made and examined by the trio who decided to use a heavier bond paper. The heavier paper was procured. Lamb testified that he printed about $100,000 of the counterfeit $10.00 notes with Easterly and Ingram present during part of the printing. He stated that after separating the defective bills from the run, he took bills of the face amount of approximately $20,000 and Ingram and Easterly took the remainder.

The next prosecution witness was Clifford Hendricks who identified Easterly as the man who on two occasions had come to his print shop and purchased paper representing himself as an insurance man. He also identified Ingram, but this identification was qualified and uncertain.

Testimony of Pam Fike corroborated that of other witnesses. She testified that Easterly told her he was going to make some money through counterfeiting and that he had purchased the paper by posing as an insurance man and that Easterly showed her some of the counterfeit notes. She related a conversation she had with Fearn concerning the mailing of the negatives and Fearn's desire to be paid for them.

Tommy Perkins was called for the Government and testified that late one night Easterly brought a brief case full of counterfeit $10.00 notes and left it at Perkins' residence for several days. Perkins took a bundle of the bills without Easterly's knowledge. He testified that he later gave the bills to a friend from Austin, Texas, named George Abbe.

The Government next called three police officers from Coffeyville, Kansas. The first officer, Gary Swigert, testified that he observed an automobile driven by Easterly engaged in traffic violations. These violations included driving the wrong way on a one-way street and a flight from a police officer. Swigert stated the flight ended with Easterly's car being involved in a one-car accident. The second officer, Glenn Welsh, testified that he was called to a high school the following morning where he received approximately 68 of the counterfeit notes which had been picked up near the scene of the accident by children walking to school. The last officer, Allen Flowers, testified that on the morning following Easterly's accident he went to the scene of the accident and recovered a number of the counterfeit notes which were scattered about the vicinity. The notes recovered at the school, the ones recovered at the scene of the accident and the notes that Lamb identified as having been printed by him were compared by Lamb. The comparison revealed the notes to be identical.

■ The appellant's first specification of error is that no limiting instruction was given the jury as to an affidavit of co-defendant Lamb. This affidavit, the appellant asserts, incriminated the appellant and bolstered the credibility of Lamb. Lamb's testimony involved both Easterly and Ingram in the enterprise. In an effort to impeach Lamb, Ingram offered in evidence an affidavit which Lamb had given to a Secret Service agent. The affidavit implicated Easterly in counterfeiting activities but did not mention Ingram. Easterly made no request for an instruction limiting the effect of the affidavit. He requested that the jury be instructed as to hearsay testimony in the following language:

"James Melton Easterly would except to the Court's charge in that the jury is not instructed to disregard any evidence submitted on behalf of

the defendant Mackey Dowell Ingram which would be hearsay as to the defendant James Melton Easterly."

This instruction was not given and Easterly now contends that this requested instruction would have given him the desired protection against the effect of Lamb's affidavit. There is no merit in this position since the Lamb affidavit is not hearsay testimony against Easterly. McCormick, Evidence § 225. We cannot put the district court in error for refusing to give an instruction when none was requested and no apparent prejudice resulted.

Professor Wright discussing Rule 30, Fed.Rules Crim.Proc., in language applicable here states the following:

"Rule 30 provides that no party may assign as error any portion of the charge unless he objects to it before the jury retires to consider the verdict. The purpose of this provision is to give the trial court an opportunity to correct any error or omission in the charge before the jury begins its deliberations. If prompt objection is made as the rule requires, the error can then be corrected.

"The objecting party must state distinctly the matter to which he objects and the ground of his objections. The objection must be specific enough so that the trial court can perceive the basis on which it is claimed that the instruction was erroneous."

Wright, Federal Practice and Procedure: Criminal, 284, § 484.

The court gave a charge on the testimony of accomplices as follows:

"An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilty even though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care.

"You should never convict a defendant upon the unsupported testimony of an accomplice, unless you believe the unsupported testimony beyond a reasonable doubt."

The appellant contends that this charge is erroneous and no more than a charge on credibility. He complains that a charge requested by Ingram [1] which appellant's counsel attempted to adopt was not given.

 The instruction requested by Ingram was incomplete because of the omission of the name of a witness which apparently was to be inserted. The failure to give the requested charge was not error. Easterly directs the Court to our prior decision of Hull v. United States, 5th Cir. 1963, 324 F.2d 817. That case is not pertinent here. In Hull, no charge was given regarding accomplice testimo-

---

[1] "An accomplice is one who claims or testifies that he has committed a crime with the Defendant or Defendants on trial voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the criminal act charged. On the contrary, the testimony of an accomplice alone, if believed by you, may be of sufficient weight to sustain a verdict of guilty, even though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is to be received with caution and weighed with great care. You should

not convict a defendant upon the unsupported testimony of an accomplice, unless you believe the unsupported testimony beyond all reasonable doubt. You are instructed that

admits under the testimony given to being an accomplice, therefore, if a crime was committed by someone, it does not necessarily follow that the Defendant, Mackey Dowell Ingram, was involved unless the testimony of the accomplice or accomplices is believed beyond a reasonable doubt, then you must find and believe from all the evidence beyond a reasonable doubt that the Defendant is guilty."

ny. In this case there was no objection to the charge given nor to the refusal to give the charge requested. The charge given was adequate. We find no error.

■ In this same specification, Easterly now claims that the jury could have been misled by the following instruction:

"In considering the weight and credibility to be given the testimony of Robert Lewis Lamb, you may take into consideration the evidence introduced concerning his use of narcotics."

This particular instruction was specifically requested by Easterly and was adopted by him from the instructions sought by Ingram. Easterly will not be heard to complain of its inclusion.

■ ■ The appellant's third assignment of error is that the district court, by interrogation and comment, prejudiced the appellant and denied him the right to a fair trial and effective counsel. During the examination of Hendricks, the printer who sold the paper used in printing the counterfeit notes, the court took over the interrogation and asked questions which clarified the identification of the purchasers of the paper. It might have been just as well here as in many another situation for the court to permit counsel to try the case without benefit of participation by the court. However, the trial judge is not a mere moderator. He has the right and duty to make inquiry of witnesses when such questioning will serve the ends of justice. We do not find that the trial judge failed in the exercise of that restraint which is to be exercised in the judicial interrogation of a witness.

■ The appellant next urges that the court's inclusion in its instruction on impeachment of witnesses of the following:

"Evidence relating to any admission or statement claimed to have been made by the defendant outside of court should be considered with caution and weighed with great care."

was plain error requiring reversal. This language related to the defendant Lamb and was not the subject of any objection by Easterly. The authorities which he cites [2] are not in point and the instruction did no harm to Easterly. No error appears.

Easterly claimed that error was committed by the failure of the trial court to withdraw from the consideration of the jury certain overt acts alleged in the conspiracy count of the indictment. He asserted that these overt acts were without any evidentiary support. Since Easterly's conviction on the substantive counts is affirmed and the sentences on each of the counts are to run concurrently, it is unnecessary to consider the question raised with respect to the overt acts in the conspiracy charge. The rule has been succinctly stated by Professor Wright in these terms:

"Many cases announce a rule that if a defendant is given concurrent sentences on several counts, and the conviction on one count is found to be good, an appellate court need not consider the validity of the conviction on the other counts. That this is the general rule cannot be doubted. Wright, Federal Practice & Procedure: Criminal, 422, § 527.

The rule is of ancient vintage. Locke v. United States, 7 Cranch (11 U.S.) 339, 3 L.Ed. 364. Among the many decisions of this Court announcing this principle is United States v. Mendoza, 5th Cir. 1970, 433 F.2d 891.

In his final assignment of error, Easterly says in general terms that the court erred in refusing to charge on affirmative defenses. Easterly does not indicate what requested charges he thinks should have been given. The charges

---

2. Holmgren v. United States, 1910, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861; Surratt v. United States, 1959, 106 U.S. App.D.C. 49, 269 F.2d 240, cert. denied 371 U.S. 880, 83 S.Ct. 152, 9 L.Ed.2d 116; Pool v. United States, 9th Cir. 1958, 260 F.2d 57; United States v. Noble, 3rd Cir. 1946, 155 F.2d 315; Blanton v. United States, 8th Cir. 1914, 213 F. 320.

requested and not given which might fall within the category of his assignment of error were adequately covered in the court's instructions.

Neither singly nor in the aggregate do the contentions of the appellant put the district court in error. Its judgment and sentence is affirmed.

Godbold, Circuit Judge, concurred in part and dissented in part and filed opinion.