EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ASTERIO MOCTEZUMA VELÁZQUEZ, acusado y apelante.

*Número:* CR-70-162      *Resuelto:* 16 de noviembre de 1971

*Enrique Miranda Merced,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Rurico E. Rivera Rivera, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Convicto el apelante por un jurado del delito de asesinato en segundo grado, y por tribunal de derecho, por infringir el Art. 4 de la Ley de Armas, apeló de las sentencias que le condenan a sufrir de diez (10) a quince

(15) años de presidio, y a un (1) año de cárcel respectivamente, señalando la comisión de los siguientes tres errores: (1) comentarios y críticas del juez durante el contrainterrogatorio de los testigos de cargo que le privaron de un juicio imparcial; (2) comentarios impropios del fiscal, y (3) instrucción errónea del juez al jurado al efecto de "que para que quede debidamente establecida la defensa propia es necesario que el acusado no haya tenido participación alguna en la contienda que originó la muerte."

La prueba de cargo, demostró en síntesis, que el día 6 de febrero de 1968, como a las siete y minutos de la noche el acusado-apelante se presentó en el negocio de Felipe Velázquez Ramos, sito en el barrio Tejas de Yabucoa, portando un sable de los usados para cortar cañas y una caja de mollejas de pollo. Pidió algo de comer diciendo que tenía hambre y no tenía dinero. Se le contestó que sólo había galletas y queso y se le sirvió. El acusado insistió en que quería hablar con Felipe Velázquez y trató de penetrar dentro de la barra donde se encontraba Velázquez. Éste le dijo "Para acá no te metas porque ya tu tuviste un problema conmigo que me provocaste y te denuncié y te metieron ya preso porque tu hiciste lo malo aquí . . . ." El acusado insistió en meterse detrás de la barra, y en los momentos en que levanta el sable, intervino Guadalupe Torres, c/p Lupe Torres, quien se encontraba en el establecimiento y le sujetó el sable iniciándose un forcejeo entre ellos. Velázquez Ramos aprovechó para salir fuera de su negocio. El acusado-apelante, quien retuvo el sable, salió fuera también en busca de Velázquez Ramos pero al informársele que éste se había ido, volvió a entrar al negocio diciendo "Bueno, este perro no lo he podido coger, pero éste me la paga." refiriéndose a Lupe Torres a quien inmediatamente le asestó un machetazo por la cabeza infiriéndole una herida, que según el testimonio del médico que practicó la autopsia del cadáver de Lupe Torres, era mortal por necesidad. Derribado por esa herida el acusado-apelante continuó agrediéndole en

el suelo, infiriéndole cuatro heridas más. La prueba de cargo reveló además que Lupe Torres estaba desarmado, que no había provocado ni agredido al acusado-apelante antes de ser atacado por éste. El Doctor Patiño declaró que no había evidencia microscópica para determinar que Lupe había ingerido licor aunque sí la había de haber comido recientemente.

El acusado presentó prueba para establecer la defensa propia. Su versión de los hechos, no creída por el jurado,.fue al efecto de que él fue al negocio de Velázquez a cambiar una caja de alas de pollo que allí le habían vendido a.su hermana; que el dueño del negocio no lo dejó entrar; que Lupe Torres le agarró el sable por el cabo y forcejearon, recibiendo el apelante sendas heridas en dos dedos; que se quedó con el sable y entonces Lupe sacó un revólver y le apuntó con él estando ambos "pegaditos"; que sintió miedo y le asestó el primer golpe en la cabeza y que ahí quedó ciego y no se dió cuenta de las otras heridas que le infirió a la víctima; que entonces salió corriendo y al pasar por la casa de Marcelino Velázquez le hicieron dos disparos; que continuó corriendo hasta llegar a su casa donde se acostó.

Hemos examinado cuidadosamente la transcripción de la evidencia. Los "múltiples pequeños incidentes" según los describe el propio acusado-apelante, están en las págs. 18, 19, 20, 21, 22, 26, 27, 28, 31, 33, 34, 51, 53, 57, 58, 67, 68 y 75 de la transcripción de la evidencia.

■ La intervención del juez en múltiples ocasiones obedeció a la forma en que el abogado del apelante conducía el contrainterrogatorio. Hacía preguntas confusas que ni el propio juez entendía, no permitía que el testigo contestara a sus preguntas, interrumpiéndole innecesariamente y sobre todo repetía una y otra y otra preguntas sobre hechos ya contestados en más de una ocasión, al extremo de que ya al final, cuando el testigo daba una contestación, el juez decía "contestado". A no ser por la intervención del juez muchos detalles en las contestaciones de los testigos hubieran quedado sin

aclarar o hubieran pasado al jurado en forma confusa. Por otro lado, la intervención oportuna del juez evitó que el juicio se prolongara más de lo que innecesariamente se prolongó. Véanse *Pueblo* v. *Cardona*, 57 D.P.R. 695 (1940) ; *Pueblo* v. *Camacho*, 69 D.P.R. 358 (1948) ; *Pueblo* v. *Vázquez*, 68 D.P.R. 67 (1948) ; *Pueblo* v. *Román*, 42 D.P.R. 642 (1931) ; *Pueblo* v. *Gómez*, 45 D.P.R. 812 (1933). Los hechos en este caso, no caen, por tanto, dentro de la doctrina del caso de *Pueblo* v. *Aletriz*, 85 D.P.R. 646 (1962).

■ Tampoco el fiscal hizo comentario alguno que lesionara los derechos sustanciales del acusado-apelante. El acusado había declarado que después de herir a Lupe Torres se fue a dormir y al día siguiente se fue para su trabajo. El fiscal le preguntó entonces que si sabiendo que había una persona que él había herido, no le importó eso. Hubo objeción a la pregunta y fue sostenida por la Corte. Entonces el fiscal dijo: "Nada más con el testigo, Vuestro Honor. Lo ha dicho el propio testigo." En ese momento el comentario era inoportuno. Sin embargo en su informe al jurado, tratándose de un proceso bajo acusación de asesinato en primer grado, con todos los elementos que ella contiene, el fiscal podía argumentar respecto a la actitud asumida por el apelante después de haber herido de muerte a un ser humano. En su consecuencia, un comentario del fiscal permisible, pero hecho en momento inoportuno, no lesiona los derechos del acusado.

■ El planteamiento sobre la instrucción al efecto de que al alegar la defensa propia "es necesario que la persona que invoca a su favor el beneficio de la defensa propia no haya tenido culpa en la lucha a la cual fue llevada y de la cual resultó muerta otra persona . . . " ha sido ya resuelta en contra del apelante. *Pueblo* v. *Román Marrero*, 96 D.P.R. 796 (1968) ; *Pueblo* v. *Marcelino Hernández Maldonado*, opinión *per curiam* del 9 de junio de 1964. (Ref. Colegio Abogados 1964-112.)

*Se confirmarán las sentencias apeladas.*

El Juez Presidente, Señor Negrón Fernández, no intervino.