UNITED STATES of America,
Plaintiff-Appellee,

v.

Ruth Margaret WATSON, Defendant-
Appellant.

No. 72–1782

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 26, 1972.

Rehearing Denied Oct. 16, 1972.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409.

Fred A. Jones, Jr., Miami, Fla. (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Carol M. Anderson, Asst. U. S. Atty., for plaintiff-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant, Ruth Margaret Watson, appeals from a jury verdict and conviction for having conspired with her coindictee, Roger Hill, to abstract articles from mail depositories and to unlawfully receive, conceal and possess such articles, in violation of 18 U.S.C. §§ 371 and 1708. The indictment charged that it was a part of said conspiracy that Watson and Hill would steal checks from department mail depositories to obtain particulars of bank accounts and signatures of the account holders; that they would then visit the banks and, by the use of the information obtained from the stolen checks, they would acquire blank checks on those accounts. They would then make the checks payable to cash or an alias and cash them at the respective banks. The overt acts charged in connection with the conspiracy count recited that on December 1, 1971, Hill stole from a mail depository a letter containing a check drawn on the First National Bank and Trust Company of Stuart, Florida, and signed by Mary E. Welker; that on December 2, 1971, appellant Watson, appearing as Mary E. Welker, cashed a check for $900 at the First National Bank and Trust Company of Stuart, said check being payable to cash. Hill and Watson were also charged with six additional substantive counts of possessing checks stolen from various mail depositories, drawn on several banks by additional bank customers. Hill entered a plea of guilty to the conspiracy count of the indictment and was sentenced thereon. Appellant Watson's case proceeded to trial. At the conclusion of the Government's evidence, the Trial Court dismissed the substantive counts against appellant. A jury thereafter found her guilty of the conspiracy count resulting in her conviction and sentence, from which she appeals.

Appellant contends that (1) the Trial Judge erred by his excessive participation in the trial thereby aiding the prosecutrix, (2) the testimony of Postal Inspector DePriest relative to certain incriminating statements of appellant was erroneously admitted because at that time no corpus delicti had been established, and (3) that the evidence was insufficient to prove either a conspiracy or the voluntariness of appellant to enter into a conspiracy. We have examined the record and find no reversible error.

■■ In regard to appellant's first contention, we observe from a full reading of the transcript that in several instances the Trial Judge did intervene in the proceedings by directing questions to the witness. However, we find no error here. The only possible effect of the Court's participation was to enable the jury to hear the evidence in a clear, orderly and methodical manner. It is obvious, from certain remarks of the Judge, that he considered this important because of the apparent unfamiliarity of the admittedly inexperienced prosecutrix with the technical aspects of conducting the examination and by her tendency toward repetition. In order to serve the ends of justice, it is clearly the Trial Judge's right and duty to interject himself into the trial by pertinent inquiries when it becomes necessary to bring out matters that have been insufficiently or confusingly developed by counsel. See Grant v. United States, 5 Cir. 1969, 407 F.2d 56, 58; United States v. Easterly, 5 Cir. 1971, 444 F.2d 1236, 1240. In no instance, however, did the Trial Judge by his intervention establish to the prejudice of appellant relevant evidence that had not already been brought out, albeit circuitously, by the Government. We find that the proper judicial restraint was used and that the Court's participation in the trial in no way deprived appellant of due process, or resulted in any error requiring reversal.

██ Postal Inspector DePriest testified that appellant had admitted to him that she had participated with Hill in making arrangements to cash checks drawn on Mary E. Welker's account at the First National Bank in Stuart, Florida, and that she did in fact cash one check on that account in the sum of $900 on December 2, 1971. A summary of the pertinent testimony is shown in the margin.[1] Appellant contends that the Court erred in admitting this testimony prior to proof by the Government of the corpus delicti of the crime. We do not agree. "It is sufficient if the independent evidence, together with the confession, establishes guilt beyond a reasonable doubt. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); Caster v. United States, 319 F. 2d 850 (5th Cir., 1963)." Moll v. United States, 5 Cir., 1969, 413 F.2d 1233, 1239. And the corroborating independent facts need only support the "essential facts admitted sufficiently to justify a jury inference of their truth." Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 164 (1954). See also United States v. Frazier, 5 Cir., 1970, 434 F.2d 994, 995. The Government met these standards. Prior to DePriest's testimony, the Government introduced witnesses who testified that appellant was seen in the bank on December 2, 1971; that using the name, account number and address of Mary E. Welker, she requested and received from bank personnel counter checks for that account, that subsequently she cashed a check on Welker's account in the sum of $900, that she and a man (not identified at the time), whose

suspicious movements and actions had already been under close observation by one of the bank vice presidents, left the bank and entered a two-door yellow Buick Skylark; that appellant returned a short time later and attempted to cash another check on the same account in the sum of $1,900; that because of appellant's apparent nervousness her actions became suspect, resulting in the bank teller's making a comparison of the signatures of Welker and appellant and the subsequent arrest of appellant. The Government further established that the driver of the yellow Buick Skylark, who attempted to flee from the scene, was subsequently arrested, after a roadblock thwarted his escape efforts, and that his identity was established as Roger James Hill.

██ Finally, appellant's contention that her participation in the conspiracy was involuntary and induced by threats from Hill is refuted by the record. Appellant testified that she had known Hill since 1966 to 1967; that during the course of their acquaintance she had participated with him in perpetrating similar crimes at St. Petersburg, Clearwater and Fort Myers, Florida. She also admitted to two convictions for forgery prior to the time that she first met Hill. Such evidence was simply sufficient for the jury to conclude beyond a reasonable doubt that appellant's role in the conspiracy was a voluntary one. Viewing the evidence in the light most favorable to the Government, there was substantial evidence to support the verdict. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Affirmed.

---

1. DePriest testified that appellant admitted to him that she and Hill traveled together from Miami to Stuart, Florida, where she accompanied him to a condominium apartment building. Hill went inside and when he returned he had mail in his possession. They returned to Miami and discussed ways of obtaining money from the bank in Stuart. She again accompanied him to Stuart two days later, at which time she entered the First National Bank, made a deposit of $1,700 into Mary E. Welker's account, using a check and deposit slip that were given to her by Hill. She also cashed a check for $900 on the same account, then left the bank. Hill asked her to return to the bank with another check for $1,900. When she presented this check the teller left the window. Appellant became scared and left the bank. Later one of the bank officials asked her to step back into the bank.