EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANGEL LUIS PABÓN, acusado y apelante.

*Número:* CR-74-28      *Resuelto:* 13 de septiembre de 1974

*Santos Sánchez Lorenzi,* abogado del apelante; *Peter Ortiz, Procurador General Interino,* y *Federico Rodríguez Gelpí, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Se acusó al apelante de violar los Arts. 108 y 109 de la Ley de Bebidas, Ley Núm. 143 del 30 de junio de 1969, 13 L.P.R.A. secs. 6108 y 6109, consistente en poseer y vender bebidas alcohólicas sin pagar los correspondientes impuestos. Se le juzgó por tribunal de derecho y, hallado convicto, se le impuso por el Tribunal Superior una multa de $100 por el delito de posesión y otra de $200 por el de vender.

Se le imputan al tribunal de instancia dos errores en la apelación ante nos: que el veredicto es contrario a la prueba y al derecho y que el juzgador actuó "como juez fiscal, haciendo un número de preguntas proporcionalmente mayor a las formuladas por el fiscal, tratando de probar hechos no probados por el fiscal."

No se cometió el primer error ni exige discusión extensa. Hubo prueba suficiente para justificar la decisión de la ilustrada sala sentenciadora. Se declaró sobre la posesión y la venta de la bebida, así como sobre la omisión del pago de impuestos. Hubo cierta confusión, así como pequeñas contradicciones, en el testimonio del agente de Rentas Internas, pero no de tal índole que afectasen su credibilidad y que ameriten nuestra intervención con la deferencia debida a la discreción del evaluador de los hechos en primera instancia. *Pueblo* v. *Rodríguez Vallejo*, 100 D.P.R. 426, 429 (1972).

No se incurrió tampoco en el segundo error, pero su planteamiento exige consideración más detenida por las cuestiones que suscita respecto al rol del juez en los juicios criminales en Puerto Rico.

En tiempos modernos han existido dos modos básicos de enjuiciamiento: el juicio acusatorio y el inquisitorial, despojando este último término de toda posible connotación peyorativa. En el derecho inglés el juicio de tipo acusatorio se convirtió tarde en la Edad Media en el preferido, especialmente al tomar fuerza la institución del jurado. En los países

donde priva el derecho civil se adoptó el juicio inquisitorial. La función del juez en los dos sistemas es en principio distinta. En el juicio acusatorio, el juez es básicamente un árbitro o moderador; en el inquisitorial, el juez juega un papel activo en la búsqueda de la verdad. Véase, para una corta historia de ambos procedimientos: Jackson, R. M., *The Machinery of Justice in England*, Cambridge Univ. Press, 6th ed., 1972, pág. 18 *et seq.*

En Puerto Rico regía a fines del siglo diecinueve, por supuesto, el sistema utilizado por los países de raíz latina. Véase el Art. 708 de la Ley de Enjuiciamiento Criminal de 1882, extendida a Cuba y Puerto Rico el 19 de octubre de 1888. Ministerio de Ultramar, *Ley de Enjuiciamiento Criminal*, Madrid. Imp. de Moreno y Rojas, 1888, págs. 187–188. A mitad del siglo pasado, de hecho, aún no se contaba con promotores fiscales. Ormaechea, F. de: *Memoria sobre los Tribunales y la Legislación de la Isla de Puerto Rico*, Madrid, 1850, pág. 15. El cambio al método acusatorio ocurrió, como en muchos otros casos, *sub silentio*, sin legislación al efecto, asumiéndose simplemente, sin mayor discusión, que así debía de ser. Ver por ejemplo: *Pueblo v. Acevedo*, 35 D.P.R. 966, 970 (1926). La adopción de la institución del jurado para los delitos graves[1] necesariamente tuvo que influir particularmente en lo ocurrido, aunque no explica de por sí la extensión, sin disposición expresa, del sistema acusatorio a otras causas criminales donde los hechos se juzgasen de otro modo. La sustitución de nuestro antiguo derecho penal y de enjuiciamiento criminal por legislación calcada de patrones norteamericanos debió haber pesado también en lo sucedido.

No es indispensable ahondar en lo anterior, sin embargo, porque tanto en Puerto Rico como en Estados Unidos la jurisprudencia le ha ido asignando al juez un papel crecientemente más activo que el que le destinaba el sistema original inglés.

[1] Código de Enjuiciamiento Criminal, ed. de 1902, Art. 178.

En *Pueblo* v. *León,* 53 D.P.R. 429, 441 (1938), por ejemplo, se dijo:

". . . El juez puede hacer a un testigo cualquier pregunta que crea necesario para aclarar, en bien de la justicia, cualquier punto obscuro que pueda haber quedado después de los interrogatorios del fiscal y de la defensa; pero no debe examinar a un testigo con el propósito de contradecirlo o desacreditarlo ante el jurado."

En el mismo caso todavía se califica al juez, sin embargo, de simple "árbitro" (a la pág. 440). En casos subsiguientes se expande poco a poco este concepto de la función del juez. *Pueblo* v. *Aletriz,* 85 D.P.R. 646 (1962); *Pueblo* v. *Martell Cajigas,* 88 D.P.R. 636 (1963); *Pueblo* v. *Rivera Guzmán,* 98 D.P.R. 691 (1970); *Pueblo* v. *Moctezuma Velázquez,* 100 D.P.R. 228, 230, 231 (1971). Es interesante observar que hace varios años, por ejemplo, se comenzó a distinguir debidamente entre casos vistos ante un jurado y los juzgados por tribunal de derecho, *Pueblo* v. *Rodríguez Ocaña,* 88 D.P.R. 335 (1963).

En Estados Unidos ocurre un cambio tan o más extenso que en Puerto Rico en la concepción de la verdadera función del juez al presidir un juicio criminal. En *Quercia* v. *United States,* 289 U.S. 466, 469 (1933) afirmó el tribunal que el juez en una corte federal no es un mero moderador, sino el director del juicio, a cargo de que éste se conduzca debidamente. Véanse también: *Glasser* v. *United States,* 315 U.S. 60 (1944); *United States* v. *Warren,* 120 F.2d 211, 212 (2d Cir. 1941) (Learned Hand).

En *United States* v. *Brandt,* 196 F.2d 653, 655 (2d Cir. 1952), el juez Charles E. Clark extendió la doctrina de *Quercia,* expresando que el juez no solo goza de la prerrogativa de extraer y dilucidar los hechos que considere necesarios para la clara presentación y entendimiento de las cuestiones envueltas en las causas criminales, sino que es su deber hacerlo, siempre que se mantenga el necesario clima de imparcialidad. La regla de *Brandt* cuenta hoy con reconocido

prestigio en Estados Unidos. *Spindler* v. *United States*, 336 F.2d 678, 682 (9th Cir. 1964), *cert. den.* 380 U.S. 909; *United States* v. *Watson*, 466 F.2d 549, 550 (5th Cir. 1972); *United States* v. *Atkins*, 487 F.2d 257 (2d Cir. 1973); 2 Wright, *Federal Practice and Procedure: Criminal*, págs. 176–179, sec. 415 (1969). Se ha hecho ya decididamente más borrosa la antigua línea divisoria entre el juicio acusatorio y el inquisitorial de hace siglos.

Debido a la naturaleza de nuestra tradición jurídica básica, existe aún más razón en Puerto Rico para reexaminar la función del juez en las causas criminales. El concepto del juicio acusatorio, en su versión primitiva, parece hallar especial apoyo en la creencia de que la justicia se produce mágicamente del combate entre dos adversarios, presidido por un juez cuya función esencial es ver tan sólo que se cumplan las reglas del juego. Rechazamos dicha visión de la función del juez.

El juez no es el simple árbitro de un torneo medieval entre la defensa y el Ministerio Público o el retraído moderador de un debate. El juez es partícipe y actor principal en el esclarecimiento de la verdad y en la determinación de lo que es justo. El juez puede y debe ser en casos vistos con o sin jurado, aunque con mayor libertad en los segundos, participante activo en la búsqueda de la justicia, siempre que no vulnere la imparcialidad que su alto oficio reclama. Puede el juzgador en consecuencia requerir la declaración de determinados testigos o interrogar a los que las partes ofrezcan, siempre que su conducta se mantenga dentro de las normas de sobriedad y equilibrio que impiden que el juez sustituya, en vez de que complemente, la labor del fiscal o del defensor. Nada impide que un juez, para aclarar un testimonio o una situación, o consciente de que no se han formulado algunas preguntas centrales para la determinación de lo sucedido verdaderamente en un caso, se tome la iniciativa a dicho efecto.

A la luz de los principios expuestos el juez en el caso de autos actuó con entera mesura. Su intervención se limitó a esclarecer los hechos y obtener que se explicasen ciertas contradicciones. Sus preguntas reforzaron el caso del fiscal, pero pudo suceder lo contrario. Su conducta fue imparcial y encaminada a servir los fines de la justicia.

*Se confirmará la sentencia apelada.*